

**IT IS ORDERED as set forth below:**

**Date: August 11, 2020**

_____

**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBER** |
| | : | |
| LESLIE DIONNE HUGHES, | : | 17-52260-LRC |
| | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 13 OF THE |
| DEBTOR. | : | BANKRUPTCY CODE |

## <u>ORDER</u>

Before the Court is an objection (Doc. 39) (the "Objection") to the proof of claim filed by Seterus, Inc. ("Seterus") as authorized subservicer for Federal National Mortgage Association ("FNMA") (Claim Number 3-1) (the "Claim"); a motion for relief from the automatic stay filed by FNMA (Doc. 33) (the "Motion for Relief"); and confirmation of Debtor's proposed Chapter 13 plan (Doc. 46) (the "Plan"). These matters constitute core proceedings, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B), (G), (L); 1334. This Order shall constitute findings of fact and

conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.  To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such, and to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such.

### PROCEDURAL HISTORY AND FINDINGS OF FACT

Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on February 6, 2017 (the "Petition Date").[1]  The Plan provides for payments of $570 per month; an applicable commitment period of sixty months; payment of attorney's fees entitled to administrative expense priority in the amount of $3,750;[2] payment in full of other priority claims;[3] and payment "to creditors with allowed general unsecured claims [of] a pro rata share of $0.00 or 100%, whichever is greater."   Allowed general unsecured claims filed in this case total $316.02 and include only a claim filed by American InfoSource LP, as agent for Verizon (Claim No. 2).   *See* Claims Registry.[4]

According to Debtor's Schedule A/B (Doc. 36), Debtor owns real estate known as 2270 Charles Place, Lithia Springs, Georgia (the "Property"), and the Property is her home. Debtor values the Property at $182,488.   On Schedule D, Debtor listed FNMA and Seterus as entities holding claims secured by the Property that are "disputed."   The Plan does not

---

[1]   The Court takes judicial notice of the petition, Debtor's schedules, the proofs of claim filed in this case, and Debtor's proposed Chapter 13 plan.
[2]   *See* Order Approving Application for Compensation for Joy Nesmith Chatman, Doc. 102.
[3]   The Internal Revenue Service filed a claim for $4,996, but later amended that claim to $0.   *See* Claim Number 1-2.
[4]   Debtor objected to Claim Number 4, filed by Portfolio Recovery Associates, LLC in the amount of $4,925.68, and the Court disallowed the claim.   *See* Doc. 94

treat any claim secured by the Property.

On May 5, 2017, FNMA, through its servicer, Seterus,[5] filed the Claim in the amount of $137,470.19.[6]  The Claim asserts a debt owed to FNMA of $137,470.19 that is secured by a deed to secure debt on the Property and that the "[a]mount necessary to cure any default as of the" Petition Date was $22,397.68.  *See* Claim Number 3-1.  Attached to the Claim are copies of a security deed (the "DSD") and promissory note (the "Note") in favor of the original lender, Washington Mutual Bank, F.A. ("WaMu"), a recorded assignment of the Note and DSD from the FDIC as receiver for WaMu to JPMorgan Chase N.A. ("JPMC"), a recorded assignment of the Note and DSD from JPMC to FNMA, and a payment history.  FNMA also filed the Motion for Relief on May 25, 2017, asserting an entitlement to relief under § 362(d) due to Debtor's failure to make post-petition payments on the debt secured by the Property.  *See* Doc. 33 (the "Motion for Relief").

At an initial hearing on confirmation of the Plan on May 25, 2017, counsel for the Chapter 13 Trustee informed the Court, and Debtor's former counsel confirmed, that Debtor believed that FNMA did not hold a valid lien on the Property and that she intended

---

[5] A loan servicer is a real party in interest and has "standing to conduct, through legal counsel, the legal affairs of the investor relating to the debt it services."  *In re Freeman*, 446 B.R. 625, 632 (Bankr. S.D. Ga. 2010) (citing *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002)).

[6] On May 22, 2019, a Transfer of Claim Transfer Agreement was filed, pursuant to Rule 3001(e) (the "Claim Transfer").  Based on statements made by counsel for FNMA during the hearing and testimony of FNMA's witness, the Claim Transfer appears to be an attempt to change only the identity of FNMA's servicer from Seterus to Nationstar Mortgage LLC D/B/A Mr. Cooper ("Nationstar"), rather than the transfer of ownership of the Claim from FNMA to Nationstar. Specifically, Mr. Greenlee testified that Nationstar "acquired" an interest in the Loan on March 1, 2019, when it purchased Seterus, including all of the loans that Seterus was servicing and that Nationstar is now the servicer of the Loan on behalf of FNMA.  Mr. Greenlee also testified that Seterus only serviced FNMA loans.

3

to file an adversary proceeding to determine the validity of the DSD and an objection to the Claim.[7]   Additionally, the Court held an initial hearing on the Motion for Relief, at which time the Court declined to lift the automatic stay in favor of FNMA, provided Debtor "escrow" her regular monthly payment with her former attorney to provide adequate protection to FNMA's interest in the Property in the event the Court determined the Claim was valid.

On June 4, 2017, Debtor filed the Objection. Debtor objected to the Claim because: (1) Debtor rescinded the loan (the "Loan") she obtained from WaMu; (2) Debtor received correspondence from a prior servicer, JPMC, that the balance due on the Loan was $0; (3) Debtor received account statements from Seterus with a new account number, and Debtor never entered a new contract with Seterus allowing Seterus to open a new account; (4) Debtor received communications from FNMA indicating that it had sold the Loan and that the Loan was no longer in any pool owned by FNMA; and (5) Debtor received communication from FNMA indicating that it has owned the Loan since 2006, which would make the chain of title attached to the Claim false and misleading.   In addition, Debtor now asserts that she did not sign the Note or the DSD and that all of the documents connected with the Loan are fraudulent.

On June 27, 2017, Debtor, proceeding *pro se*, filed a complaint to determine the

---

[7]  "The appropriate method to seek adjudication of the validity of a lien is an adversary proceeding under Bankruptcy Rule 7001(2)."   *Smith v. HSBC Bank, N.A.*, 2020 WL 1527158, at *6 (S.D. Ga. Mar. 30, 2020).

4

validity of the DSD and for additional relief against multiple parties, including FNMA and

Seterus (the "Complaint").   *See* Adv. Pro. Case No. 17-5169 ("AP").   Relevant to the

Claim, Debtor asserted in the AP that she rescinded the Loan in November 2006 and that

various parties had violated the Truth in Lending Act ("TILA") by attempting to collect a

debt from her by fraudulently using a new loan number.   In an order entered on April 13,

2018, the Court dismissed the portion of the Complaint that asserted rescission of the Loan

for failure to state a claim and held that, as a matter of law, there is "nothing fraudulent or

unlawful about a loan number or account number changing when the loan servicer changes,

and in fact this is a common practice."   *See* AP, Doc. 51.

     On February 24, 2020, the Court held an evidentiary hearing on the Objection, the

Motion for Relief, and confirmation of the Plan.   As a preliminary matter, the Court notes

that it reserved ruling on several evidentiary objections raised during the hearing.   The

Court now overrules Debtor's objection to the testimony of Nationstar's witness, Jon

Greenlee, on the basis of lack of personal knowledge regarding the Loan and her objection

to Nationstar's Exhibit J.

     Federal Rule of Evidence 602 provides in relevant part, "[a] witness may testify to

a matter only if evidence is introduced sufficient to support a finding that the witness has

personal knowledge of the matter. Evidence to prove personal knowledge may consist of

the witness's own testimony." Fed. R. Evid. 602. "The test for whether a witness may testify

about a particular matter is whether a reasonable trier of fact could believe the witness had

5

personal knowledge of that matter." *In re Hilton*, 544 B.R. 1, 7-8 (Bankr. N.D.N.Y. 2016).

"Generally, employees have personal knowledge to testify about their experiences at their

place of employment" and the "records of their employers that they reviewed in their

official capacities." *Id*. at 8; *see also Monty v. U.S. Bank, N.A. ex rel. J.P. Morgan Mortg.

Acquisition Tr. 2006-CW*, 2015 WL 6441725, at *5 (D. Vt. Oct. 22, 2015) ("It is true that

there is no evidence that the SPS affiants or their employer were ever physically in custody

of the original Note—the document custodian was at all relevant times Bank of New York

Mellon. Neither is there any evidence that the SPS affiants are employees of any entity

other than SPS, which is a servicer and not the document custodian or the trustee. However,

such evidence is not necessary for the SPS affiants to be qualified under Rule 803(6).").

The Court finds Mr. Greenlee's testimony that he has worked for both Seterus and

Nationstar, has knowledge of the recordkeeping procedures of both companies, and has

reviewed the records regarding the Loan to be sufficient to establish his personal

knowledge regarding the matters relevant to the Court's determination.   Specifically, Mr.

Greenlee has worked for Nationstar since March 1, 2019.   Prior to that time, Mr. Greenlee

worked for Seterus.    In his position as a Default Case Analyst, he reviews business records

and documents, has access to Nationstar's business records, and regularly participates in

the creation, maintenance, and supervision of Nationstar's business records.   Mr. Greenlee

also described the computer systems, known as LSAMS and FileNet, that Nationstar uses

to track information regarding loans, which includes an imaging database, as well as the

procedures used by Nationstar to ensure the accuracy of the records, including those records that are imported from a prior servicer.

Further, the Court overrules Debtor's objections to the lack of authentication and hearsay of Nationstar's Exhibit J (the payment history).   Mr. Greenlee identified Nationstar's Exhibit J as a document created by Nationstar on October 31, 2019, detailing the amount of the payments that had come due on the Loan since the Petition Date.   He testified that the document was created and maintained in the ordinary course of business by Nationstar and described in detail how Nationstar maintains the source documents, including the process by which Nationstar incorporates records created and maintained by its predecessors in interest into its system through a "loan boarding" process, during which Nationstar compares hundreds of data points to ensure that each loan has been properly amortized.   If a discrepancy is found in the prior servicer's records that cannot be resolved by working with the prior servicer, the loan is rejected.   Accordingly, Mr. Greenlee's testimony meets the "light burden of showing the authenticity of the" payment history. *Patch of Land Lending, LLC v. Realty Capital Ventures, LLC*, 2018 WL 3899388, at *6 (S.D. Fla. July 12, 2018) ("As to the authentication burden, which is a light one, Plaintiff would need to establish only a prima facie case that the Loan Payoff document is what Plaintiff claims it is.") (citing Fed. R. Evid. 901(a); *United States v. Caldwell*, 776 F.2d 989, 1001–02 (11th Cir. 1985) (holding that Rule 901 requires only enough evidence that a jury "could have reasonably concluded" that a document was authentic)); *see also U.S. Bank Tr.,*

*N.A. as Tr. for LSF9 Master Participation Tr. v. Jones*, 925 F.3d 534, 540 (1st Cir. 2019).

The Court also concludes that, based on Mr. Greenlee's testimony, Nationstar's Exhibit J meets the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6); *see also RADC/CADC Venture 2010-2, LLC v. Hunt Valley Properties, LLC*, 2012 WL 2921793, at *7 (N.D. Ga. July 17, 2012); *F.D.I.C. v. P.C.F*, 2014 WL 960923, at *6 (N.D. Ga. Mar. 11, 2014) (holding that a loan history attached to an affidavit "may be considered because the document falls within the business record exception to the hearsay rule"). The Court will address the remaining evidentiary objections below as necessary.

Having heard the testimony of the witnesses and reviewed the documents admitted into evidence, the Court makes the following findings of fact:

1. The Chapter 13 Trustee is holding $14,991.66 in payments made by Debtor, including $3,594 in funds paid by Debtor to her former counsel pursuant to the Court's interim order on the Motion for Relief. Proffer of Mandy Campbell.

2. Attorney's fees of $1,650 are due to Debtor's former counsel. *Id.*

3. Debtor purchased the Property from Community Bank and Trust in 2006. She made a down payment of $60,000 and borrowed the remaining $140,525 from WaMu to pay the purchase price (the "Loan"). Testimony of Debtor.

4. The files associated with the Loan contain an application that Debtor did not prepare or sign that contains errors regarding Debtor's work address and phone number and false information regarding her assets, such as the value of her furniture, and her

8

obligations.    Testimony of Debtor; Exhibit D1; Exhibit D2.

5.  Debtor signed a promissory note in favor of WaMu and executed a deed to secure debt granting a security interest in the Property to WaMu.   *Id*.

6.  The DSD grants a security interest in the Property to WaMu, FNMA is in possession of the Note, and the Note is endorsed in blank.   JPMC received an assignment of the DSD when it purchased the assets of WaMu, and FNMA received an assignment of the DSD from JPMC.   Testimony of Mr, Greenlee; Nationstar's Exhibit C; Nationstar's Exhibit D; Nationstar's Exhibit E; Nationstar's Exhibit F.[8]

7.  Debtor made regular payments on the Loan until Seterus refused to accept payments

---

[8]   The Court overrules Debtor's objection to the authenticity of the DSD, the Note, and the assignments. The Court finds that Mr. Greenlee identified these documents. As Debtor testified that she did not sign the DSD and the Note, the Court will conditionally admit the DSD and the Note as a true and correct copy of the DSD and the Note that FNMA holds in its possession, but final admission of the DSD and the Note will be subject to further consideration of the evidence as to whether the signatures on the DSD and the Note are in fact Debtor's signature.   *Accord Radiance Capital Receivables Eighteen, LLC v. Concannon*, 2017 WL 4533449, at *3 (W.D. Mo. Oct. 10, 2017), *aff'd*, 920 F.3d 552 (8th Cir. 2019) (noting that the court had conditionally admitted a guaranty at trial, subject to final resolution of whether the signature was the defendant's); *Stiles Mach., Inc. v. Lestorti*, 2007 WL 2099218, at *7 n.24 (D. Conn. July 17, 2007) (stating that the "'satisfaction of Rule 901 requirements does not deprive the trier of fact of the power to decide what weight to attribute to the evidence after it has been admitted,' or to decide 'that the evidence is not authentic and carries no weight whatsoever.'" (quoting Charles A. Wright and Victor J. Gold, Fed. Prac. & Proc. Evid. § 7103 (2007)).   The Court also overrules Debtor's objection to these documents on the basis of hearsay.   These documents are not considered hearsay because they are "verbal acts" that are not an assertive statement and are not offered to prove the truth of the matter asserted.   *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."); Fed. R. Evid. 801(a) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.").   Rather, the DSD, the Note, and the assignments themselves have legal effect on the rights of the parties and are offered to prove that legal effect.   *See Moody v. Coliseum Psychiatric Ctr., LLC*, 2006 WL 1652281, at *6 (M.D. Ga. June 12, 2006) ("The contract . . . is a verbal act that affects the legal rights of [the parties.]   It is thus not hearsay and is not inadmissible on that basis."); *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) ("[V]erbal acts are not in the first instance assertive statements and not offered to prove the truth of the matter asserted."); *In re Vargas*, 396 B.R. 511, 519 (Bankr. C.D. Cal. 2008) ("For admission as evidence, a promissory note does not need to qualify as a record of regularly conducted activity (or for some other exception to the hearsay rule). The note itself is not hearsay, and thus is not subject to the hearsay rule.").

9

from her using the original loan number assigned by WaMu to the Loan. Testimony of Debtor.

8.  The last payment made on the Loan was received by Seterus on or about September 1, 2015.   Nationstar's Exhibit J.

9.  Debtor did not make a payment of $135,583 on the Loan on September 23, 2011. Testimony of Debtor.

10.  Debtor has not fully satisfied the Loan, including all accrued interest. Testimony of Debtor, Nationstar's Exhibit J.

11.  JPMC advertised a foreclosure sale of the Property in October 2011.   Testimony of Debtor.

12.   The Property is worth $200,000.  *Id*.

13.   Nationstar is the servicer of the Loan, having acquired the servicing rights from Seterus on March 1, 2019.   Testimony of Mr. Greenlee.

## CONCLUSIONS OF LAW

### A.  Claim Objection

Under § 502(a), a proof of claim that is filed under § 501 of the Bankruptcy Code is deemed allowed, unless a party in interest objects.   Such a proof of claim may be executed by either the creditor or the creditor's authorized agent.   11 U.S.C. § 501(a); FED. R. BANKR. P. 3001(b).   If an objection to a claim is made, the Court shall, after notice and a hearing, determine the amount of the claim and shall allow such claim in such amount unless

10

the Court finds a basis to disallow the claim under § 502(b).   11 U.S.C. § 502(b).   Under

§ 502(b)(1), the Court shall disallow a claim if "such claim is unenforceable against the

debtor and property of the debtor, under any agreement or applicable law . . . ."   *Id.*

"During the claims allowance process, the burden of proof shifts between the parties."

*In re Foster*, 500 B.R. 197, 202 (Bankr. N.D. Ga. 2013).

> Initially, a creditor bears the burden of establishing its claim.  *See* Fed. R.
> Bankr. P. 3001(f).   If a claim is based on a writing, a copy of the writing is to
> be filed along with the proof of claim.   Fed. R. Bankr. P. 3001(c).   Once a
> creditor properly executes and files a proof of claim in accordance with the
> Federal Rules of Bankruptcy Procedure, its proof of claim is considered
> "prima facie evidence of the validity and amount of the claim."   Fed. R.
> Bankr. P. 3001(f); *In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir.1993).   If a party
> objects to the claim, the objecting party carries the burden of going forward
> with evidence to overcome the prima facie validity and amount of the claim.
> *Juniper Dev. Group v. Kahn*, 993 F.2d 915, 925 (1st Cir.1993). If the objecting
> party produces evidence to refute at least one of the allegations essential to the
> claim's legal sufficiency, the burden of persuasion shifts back to the claimant.
> *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992); *In re Britt*, 199
> B.R. 1000, 1008 (Bankr. N.D. Ala. 1996).   Although Rule 3001(f) places the
> burden of going forward on the objecting party, the burden of ultimate
> persuasion rests with the claimant. *Matter of Fidelity Holding Co., Ltd.*, 837
> F.2d 696, 698 (5th Cir. 1988).

*Id.* at 202-03.   "The objecting party bears the burden of rebutting the presumption through

'facts tending to defeat the claim by probative force equal to that of the allegations of the

proofs of claim.'" *In re Crutchfield*, 492 B.R. 60, 69 (Bankr. M.D. Ga. 2013) (quoting *In re*

*LJL Truck Center, Inc.*, 299 B.R. 663, 666 (Bankr. M.D. Ga. 2003)).

Debtor objects to the Claim on the basis that FNMA is not the party entitled to collect

the debt.   "The real party in interest with respect to a mortgage proof of claim 'is the party

entitled to enforce the note and its accompanying mortgage.'"  *In re Simmerman*, 463 B.R. 47, 59 (Bankr. S.D. Ohio 2011) (quoting *In re Smoak*, 461 B.R. 510, 517 (Bankr. S.D. Ohio 2011))[9]   The Court "must look to applicable nonbankruptcy law to determine who is entitled to enforce the promissory note." *Id*.

The Claim is based on a promissory note secured by a deed to secure debt.  Under Georgia law, a promissory note endorsed in blank is payable to bearer.  *In re Dewberry*, 2010 WL 4882016, at *2 (Bankr. N.D. Ga. Oct. 21, 2010) (citing O.C.G.A. § 11–3–205(b), § 11–1–201(5)).   A note endorsed in blank can be "negotiated by transfer of possession alone (O.C.G.A. § 11–3–205(b))," and the "holder of such a note is entitled to enforce it (O.C.G.A. § 11–3–301)." *Id*. (citing *Salahat v. F.D.I.C*., 298 Ga. App. 624, 628, 680 S.E.2d 638, 642 (2009) ("Pursuant to OCGA § 11–3–301, 'the holder of the instrument' is among the persons entitled to enforce a promissory note. OCGA § 11–3–301(i).")).   A "holder" is the person in possession if the instrument is payable to bearer. O.C.G.A. § 11–1–201(21).   Additionally, under Georgia law, the grantee or assignee of a deed to secure debt can foreclose against the property to collect the debt, even if it does not hold the promissory note.  *See* O.C.G.A. § 44-14-64(b) ("Transfers of deeds to secure debt may be endorsed upon the original deed or by a separate instrument identifying the transfer and shall be sufficient to transfer the property therein described and the indebtedness therein

---

[9]  "To establish standing as a servicer, the claimant must show that it is an authorized agent of an entity that has the right to enforce the note."  *In re Benyamin*, 596 B.R. 789, 794 (Bankr. S.D.N.Y. 2019)

secured, whether the indebtedness is evidenced by a note or other instrument or is an indebtedness which arises out of the terms or operation of the deed, together with the powers granted without specific mention thereof."); *Myrick v. Bank of Am.*, 2018 WL 3702463, at *5 (N.D. Ga. Apr. 12, 2018), report and recommendation adopted, 2018 WL 3702435 (N.D. Ga. May 7, 2018) ("[T]he Supreme Court of Georgia answered the previously unsettled question of whether a foreclosing party in Georgia needed to possess the promissory note in addition to the security deed, holding that 'current law does not require a party seeking to exercise a power of sale in a deed to secure debt to hold, in addition to the deed, the promissory note evidencing the underlying debt' . . . . [and] that nowhere in the plain language of the non-judicial foreclosure statute did it specify that the foreclosing party must hold the note in addition to the deed." (citing *You v. JP Morgan Chase Bank*, 293 Ga. 67, 71, 743 S.E.2d 428, 431 (2013)).

The Note is attached to the Claim, the Note is endorsed in blank, and FNMA is a holder of the Note.  Further, FNMA is the assignee of the DSD, which grants a security interest in the Property that FNMA may enforce through a foreclosure sale of the Property. So long as Debtor signed the Note and the DSD, as further discussed below, Nationstar has presented sufficient evidence that FNMA is the holder of the Note and an assignee of the DSD, and, therefore, is entitled to enforce the Note against Debtor and to foreclose against the Property.  As further evidence of the validity of the Note and the DSD and FNMA's entitlement to enforce the Note and the DSD, Debtor testified that she did in fact borrow

13

money to purchase the Property, the Claims Registry reflects that no other party has filed a claim in this case secured by the Property, and Debtor testified that no party, other than JPMC, Seterus, and Nationstar or attorneys working on their behalf, has ever attempted to collect from her a debt secured by the Property.

On the other hand, Debtor has not shown that FNMA is not the holder of the Note entitled to enforce the DSD.   Debtor asserts that FNMA could not be the "owner" of the Note and the DSD because she received an electronic mail message, dated November 9, 2016, from Erica, an employee of FNMA, that stated that "ownership of" Debtor's mortgage was transferred to FNMA as of September 1, 2006, but that FNMA was not acting as the servicer of the loan, see Exhibit D9,[10] which is contrary to the chain of title shown by the recorded assignments of the DSD.[11]   In Debtor's view, if FNMA has "owned" the Loan since 2006, FNMA could not have received an assignment of the DSD from JPMC because JPMC could not have acquired an interest in the DSD from WaMu.

---

[10]   Nationstar objected to Debtor's testimony and the admission of the electronic mail message on the basis of hearsay. As this statement was allegedly made by an employee of FNMA, it is arguably a statement against interest made by a party, which is not hearsay, pursuant to Rule 801(d)(2).   *See Justice v. Ocwen Loan Servicing,* 2015 WL 235738, at *7 (S.D. Ohio Jan. 16, 2015) ("But Rule 801(d)(2)(D) excludes from hearsay those statements 'offered against an opposing party ... made by the party's agent or employee on a matter within the scope of that relationship while it exists,'" and "[a]ll indicators point to Ron speaking with an employee who acted within his or her scope of employment and thus the Court finds the evidence admissible.").   Accordingly, the objection is overruled.

[11]   Nationstar asserts that Debtor lacks standing to attack the assignments, as she was not a party to them.   Because the Court finds that Debtor has failed to present evidence that the assignments are not valid, the Court need not resolve the question, but notes that courts have left open the possibility that a debtor may challenge a mortgage assignment as "invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)" as opposed to "voidable at the election of one party but otherwise effective to pass title."   *In re Jackson,* 2013 WL 6903752, at *6 (Bankr. D. Mass. Dec. 31, 2013), *aff'd,* 2017 WL 3822869 (B.A.P. 1st Cir. Aug. 23, 2017).   As the Court understands Debtor's argument, this case would fall into the former category in that Debtor is challenging FNMA's claim to the DSD on the basis that its assignor had nothing to assign.

14

FNMA's "ownership" of the Loan since 2006, however, is not inconsistent with the recorded assignments of the DSD, which show that FNMA did not receive an assignment of the DSD until 2016.   This is true because the "owner" of a loan may be different than the holder of the note or the deed to secure debt.   *Accord In re Merritt*, 702 F. App'x 90, 93 (3d Cir. 2017) ("Merritt's argument hinges on flawed logic. In Merritt's view, because Freddie Mac purchased the loan four years before the merger between National City and PNC, Freddie Mac is both the owner and holder of the note and mortgage.   But the entity entitled to enforce a note need not be the 'owner' of the note.   The 'holder' of a note—the individual or entity 'in possession of the note where the note is payable to the person or is payable to the bearer'—is qualified to enforce the note.   Freddie Mac did not become the holder of the note simply by virtue of being the owner of the note, nor did National City (and later PNC Bank by merger) lose its status as the holder of the note following the sale. 'Evidence that some other entity may be the 'owner' or an 'investor' in the Note is not relevant to this determination, as the entity with the right to enforce the Note may well not be the entity entitled to receive the economic benefits from payments received thereon.'") (internal citations omitted).   Accordingly, evidence that FNMA was the "owner" of the Loan before the DSD was assigned to FMNA does not call into question FNMA's current right to enforce the Note or to foreclose on the Property through the DSD.   The evidence before the Court indicates that FNMA is the holder of the Note and received a valid assignment of the DSD before the Petition Date.

Debtor has also testified that, on January 27, 2017, a representative of FNMA, Royce, confirmed over the telephone the fact that FNMA did not "own" the Loan.    This testimony appears to contradict the electronic mail message that Debtor testified she received from FNMA just two months earlier, in which FNMA confirmed its ownership of the Loan since 2006 without indicating that FNMA no longer owned the Loan.    The Court credits the testimony of Mr. Greenlee that FNMA holds the Note and the recorded assignments of the DSD, which show that FNMA is the assignee of the DSD, over Debtor's recollection of her conversation with Royce.    The Court, therefore, finds that Debtor's evidence is insufficient to support a finding that FNMA is not the holder of the Note entitled to enforce the DSD.

Second, Debtor objects to the Claim on the basis that she did not sign the Note and DSD.   The Court finds Debtor's testimony insufficient to support this conclusion.    As explained by the Eleventh Circuit Court of Appeals, a court may rely on a document despite "naked assertions" of forgery which are unsupported by specific factual allegations. *Graveling v. Castle Mortg. Co.*, 631 Fed. Appx. 690, 693 (11th Cir. 2015).

Debtor testified that she borrowed funds from WaMu to purchase the Property and that she executed the DSD.   Although she questions whether funds were actually paid by WaMu to Community Bank and Trust, the seller of the Property, she admits that no party has ever asserted that the purchase price for the Property was not paid.   Debtor does not deny that she signed *a* promissory note and *a* deed to secure debt, but asserts without any specifics that the promissory note that she signed almost fourteen years ago included

16

different terms than those in the Note and that somehow, some party falsified the Note and the DSD and placed her "cut and pasted" signature on the Note and the DSD.

The Court simply cannot credit this testimony without any other evidence or even any specific testimony as to how the terms of the Note differed from the promissory note Debtor believes she signed. Debtor's current position is speculative and inconsistent with the position she has previously taken throughout the related litigation on these issues. Until the time of the hearing on the Objection, although Debtor had asserted that she did not sign the HELOC promissory note, she had not alleged that either the Note or the DSD was forged. Rather, Debtor previously took the position that, when she appeared for the closing of the Loan, WaMu engaged in a "bait and switch"—meaning that the terms she was offered prior to the closing were not what she was offered at the closing, but she went ahead and signed anyway. *See*, *e.g.*, Debtor's Response to Motion for Relief, Doc. 47. The Court cannot find, based solely on Debtor's most recent testimony, that Debtor did not sign the Note and the DSD.[12]

Third, Debtor objects to the Claim because it has been satisfied. The "Itemization of Claim" attached as Exhibit "A" to the Claim is prima facie evidence sufficient to establish

_____

[12] To the extent that Debtor is objecting to the Claim based on fraud, Debtor testified regarding what appears to be an inaccurate loan application. Debtor speculates that the loan application was "built" by WaMu or some other party after the fact in order to make the Loan more palatable to sell on the secondary market and that JPMC also created some of the information in the loan application to "fill in the gaps." Even if the Court could find from the limited evidence that WaMu intentionally falsified the loan application for that purpose, the Court could not conclude that Debtor was fraudulently induced into agreeing to the Loan based on actions taken after the loan closing. Any claims for fraud on this basis would belong to any party duped into purchasing the Loan, rather than Debtor.

17

the amount owed.  *See, e.g., Bareford v. Aafes/Mil Star/Exchange*, 2010 WL 3528604 (Bankr. S.D. Ga. 2010).   Debtor presented no evidence to contest any of the specific items identified in the Claim.  *See In re Dewberry*, 2010 WL 4882016, at *2.[13]

Instead, she points to a document she received from some source that appears to be a book entry of $135,583.10 made on September 23, 2011, as proof that a payment in that amount was made on the Loan by some, unknown party.  *See* Exhibit D12.  She admits that she did not make a payment of $135,000.  She also admits that the "payment" was followed immediately by a debit in the same exact amount on the same day.   The document contains nothing to indicate the source of the payment, and Debtor has no knowledge of whom the source may be.   She speculates that, based on the date of the entry, September 23, 2011, which is near the time JPMC had scheduled a foreclosure sale for October 4, 2011, that JPMC did a "no-no" while trying to foreclose the Loan.   It is unclear whether Debtor believes that JPMC recorded the results of a foreclosure that it did not actually conduct or

---

[13]   Debtor attempted to tender a letter received from JPMC (Exhibit D13) regarding the balance on the Loan. Nationstar objected on the basis of hearsay.  Rule 801(d)(2) of the Federal Rules of Evidence allows a party to introduce a statement against an opposing party if it is one that "was made by the party in an individual or representative capacity; . . . is one the party manifested that it adopted or believed to be true; . . . was made by a person whom the party authorized to make a statement on the subject;   . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or . . . was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Eivd. 801(d)(2).  The proponent of the evidence must lay a "'sufficient foundation . . . [to] establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.'"  *Sheely v. Bank of Am., N.A.*, 2017 WL 6334833, at *4 (N.D. Ga. July 14, 2017), report and recommendation adopted in part, rejected in part, 2017 WL 6334835 (N.D. Ga. Sept. 8, 2017), *aff'd*, 738 F. App'x 603 (11th Cir. 2018).  Debtor has failed to lay a sufficient foundation to demonstrate that JPMC sent the letter to Debtor as FNMA's agent or during the course of any such agency.  There is no evidence that JPMC was acting as FNMA's agent when JPMC sent the letter to Debtor. In fact, the letter is dated February 12, 2016, but states that servicing of the Loan was transferred to Seterus, Inc. on December 1, 2015.  Accordingly, Nationstar's objection to Exhibit D13 is sustained.

whether she believes that JPMC recorded funds received from some source, even though it did not complete a sale of the Property, such as the FDIC.   There is no evidence that the Property was sold in a manner that would have resulted in funds received from a third-party purchaser or that JPMC ever requested or received payment from the FDIC on the Loan. The more likely explanation is that the book entry was the premature notation and reversal of a lender's credit bid, rather than the receipt of actual funds.

Having concluded that all of Debtor's bases for objecting to the Claim lack merit, the Court must deny the Objection and hold that the Claim is an allowed, secured claim.

### B.  Motion for Relief from Stay

FNMA seeks relief from the automatic stay provided by § 362(a) to allow it to exercise its state law rights with regard to the Property.   Debtor has not made any post-petition payments to FNMA, and as noted above, the Plan does not provide for treatment of FNMA's claim or its lien.   Debtor's failure to make post-petition mortgage payments for over two years with no intention of providing for the Claim or the lien in the Plan is "cause" to lift the automatic stay under § 362(d)(1).   Accordingly, the Motion for Relief will be granted.

### C.  Confirmation

FNMA has objected to confirmation on the basis that the Plan does not treat the Claim.   The Chapter 13 Trustee has recommended confirmation of the Plan, provided the stay is lifted, which would permit the Chapter 13 Trustee to cease funding FNMA's allowed

19

claim.   Because the Court has decided that the Motion for Relief will be granted, the Court agrees with the Chapter 13 Trustee's recommendation that the Plan meets the Bankruptcy Code's requirements for confirmation.   *See In re Smith*, 388 B.R. 603, 604–05 (Bankr. E.D. Pa. 2008) ("'In the event the plan makes no provision for one or more allowed secured claims, the plan is to be confirmed by the court regardless of its acceptance or rejection by holders of allowed secured claims not provided for by the plan and without any other showing being required under section 1325(a)(5). The holders of allowed secured claims not provided for by the plan may seek appropriate relief from the automatic stay in furtherance of any contractual or other remedies available against the chapter 13 debtor or their collateral.'" (quoting 8 Collier on Bankruptcy, ¶ 1325.06[1][b] (15th ed. rev.2005)). As the Plan does not provide for the Claim, FNMA will remain "entitled to exercise its remedies without regard to the terms of the plan upon" the granting of FNMA's motion for relief from the automatic stay.   Drake, Bonapfel, & Goodman, Chapter 13 Practice & Procedure § 18:2.   For these reasons, the Court finds that the Plan may be confirmed.

CONCLUSION

For the reasons stated above,

IT IS ORDERED that Debtor's objection to the proof of claim filed by Seterus, Inc. ("Seterus") as authorized subservicer for Federal National Mortgage Association ("FNMA") (Claim Number 3-1) (Doc. 39) is **DENIED**;

IT IS FURTHER ORDERED that the motion for relief from the automatic stay filed

by FNMA (Doc. 33) is **GRANTED**, such that the automatic stay of § 362(a) shall not apply to the Property, FNMA shall be entitled to exercise its rights under state law with regard to the Property, and the Chapter 13 Trustee shall not be required to fund the Claim;

IT IS FURTHER ORDERED that FNMA's objection to confirmation of Debtor's proposed Chapter 13 plan (Doc. 46) is **OVERRULED**, and the Plan shall be confirmed by entry of a separate, standard confirmation order;

IT IS FURTHER ORDERED that the Chapter 13 Trustee shall disburse all funds that were paid by Debtor pursuant to the Court's interim order on the Motion for Relief to FNMA;

IT IS FURTHER ORDERED that the Chapter 13 Trustee shall return to Debtor any funds remaining after payment of claims provided for by the Plan or by this Order.

**END OF DOCUMENT**

**Distribution List**

**All parties on the Court's Mailing Matrix**